(DEFENDANT'S APPEAL.)
It will not be necessary to consider in their order the objections to evidence and exceptions thereto, as the case will be disposed of in the consideration of the errors alleged in the instructions of his Honor to the jury.
The defendant rested his defense on the merits upon two grounds: (1), because he was abating a nuisance; (2), because the action of the board of aldermen, approving his act, related back and justified the *Page 390 
conduct of defendant. His Honor held that neither position can be maintained by defendant on the evidence, and he directed the jury if they believed the evidence to answer the first issue "Yes."
We have examined the acts constituting the charter of Asheville in force at the time of the act complained of and the general law concerning cities and towns, and find that, by section 3803 of The Code, applicable to all towns and cities, unless other modes are expressly provided in the charter, the commissioners "shall provide for keeping in proper repair the streets and bridges in the town in the manner and to the extent they may deem best." By the charter of Asheville, chapter 111, Private Laws 1883, sec. 19, among the powers expressly given to (630) the board of aldermen are to "provide for repairing and cleansing the streets and sidewalks," also "to suppress and remove nuisances." And by sections 37 and 38 an elaborate system is provided for the condemnation of land for streets and the assessment of benefits and damages, "whenever in the opinion of the aldermen it is advisable to obtain land or the right of way in the city for the purpose of opening new streets or widening or straightening streets already established or for making of culverts or waterways for carrying water out of the streets." But we have been unable to find any special provision, however desirable it may be that some special provision should by law be made, for the grading of the streets, and the assessment of benefits and damages arising upon the change of such grades.
This city has, then, special power and the general powers incident to all towns and cities for keeping its streets in repair, which powers would, in our opinion, include authority to make such changes in the grading of its streets as the board of aldermen might deem necessary; and that the city was only liable for damages caused by such grading when the work was done in an unskillful manner. Meares v. Wilmington, 31 N.C. 73; Wright v.Wilmington, 92 N.C. 156. It is equally clear that one, acting for himself and without authority from the board of aldermen, who undertook to change the grade of a street, would render himself liable in an action by the party injured for such damage as might have been sustained by the owner of lands or buildings upon said street, by reason of such assumption of the functions of the city by him. And if such person assumed to be acting for another than the rightful authority such other person might ratify the act after it was done, and so become a joint trespasser with the wrongdoer himself.
But the effect of a ratification by the city of an act done by (631) an unauthorized person under color of authority from the city, which act, if it had been done by the city itself, would have been rightful, would be to relieve such person from liability as a trespasser. A municipal corporation has, by its charter, granted to it certain *Page 391 
portions of the sovereignty of the State, for the purpose of assuring to the people the right of local self-government. It acts under delegated authority, and within the scope of its powers it represents the sovereignty itself.
And the fact that the ratification of defendant's act was done after action brought against him by the plaintiffs for the injury sustained, cannot affect the result of such ratification. "The rule of law is that he for whom a trespass is committed is no trespasser unless he agrees to the trespass; but if he afterwards agrees to it his subsequent assent has relation back, and is equivalent to a command, according to the well-established maxim, omnis ratihabitio retrotrahitur et mandato priorioequaparatur." Hall v. Pickersgill, 5 E. C. L., 83.
The city had the right to grade the street, and by its subsequent assent it has in effect commanded the act complained of; if it were a person who had no right to do the act and the same were done in its behalf it would be a joint trespasser with defendant, but having that right the defendant is relieved of liability if he assumed to do it for and on behalf of the city. The city has assumed any liability which may have accrued to defendant and now this liability would be only for injuries sustained by reason of unskillfulness in the work.
This doctrine of ratification will in some instances apply to torts as well as to contracts. One may under some circumstances adopt a wrong and become a wrongdoer by ratification, as where one acts for another,not assuming to act for himself, but for the other person, (632) without any precedent authority, and afterwards the act is ratified by the principal. Cooley, Torts, 127. "If an individual ratifies an act done on his behalf the nature of the act remains unchanged; it is still a mere trespass, and the party injured has the option to sue either; if the Crown ratifies the act, the character of the act becomes altered, for the ratification does not give the party injured the double option of bringing his action against the agent who committed the trespass or the principal who ratified it, but a remedy against the Crown only (such as it is), and actually exempts from liability the person who commits the trespass." Buronv. Denmar, 2 Exch., 188.
So an act which, if done by the individual, may be a trespass, but which if done by proper authority is lawful, may be ratified by such authority when it was done in its behalf. For instance: Defendants, creditors of an uncertificated bankrupt, seized his goods to hold for the assignee not yet appointed; this act was ratified by the assignees who had a right to seize them; and although this ratification was done after action brought by the bankrupt against the trespasser it was held that the defendants were not liable to plaintiff. Hall v. Pickersgill, supra. *Page 392 
It must be an act which would have been lawful if done by proper authority, for, where a State tax collector seizes property in satisfaction of taxes, refusing to accept in payment certain coupons, according to a statute of Virginia, he is liable for trespass because the act was void.Poindexter v. Greenhow, 114 U.S. 270.
The learned counsel for plaintiffs, contending that the city could not ratify the act of defendant, especially after suit brought, rely upon Pagev. Belvin, 14 S.E. 843; but in that case it was held that by the terms of the charter of the City of Richmond the grading of streets could (633) not be done until there had been a resolution or ordinance of the city council previously enacted directing the improvement to be made; the act would have been unlawful if done by the city in any manner except in that prescribed by the charter; therefore the city could not ratify an act which it was not authorized to do itself. "The council can only act by previously enacted ordinances." In this case it was also held that by reason of the injury a right of action against defendants had vested, and upon settled principles it could not be divested by subsequent action of the council. In the case before us the City of Asheville could have graded the street under its powers in the charter, without such previous action. If the grading was done by one assuming to act for it, such act, upon equally well-settled principle, was subject to ratification, and such ratification, as we have seen, had relation back to the act itself, and took away no vested right, because the right to recover damages was subject to be defeated by the subsequent ratification.
The same distinction will be found in all other cases cited for this position, for in each of them the act or contract was not in its origin binding upon the corporation by reason of not having been made in the mode prescribed by the charter, and therefore not a subject of ratification. In Zottman v. San Franciso, 20 Cal. 102., cited by plaintiffs' counsel, it was said: "Ratification is equivalent to a previous authority; it operates upon the contract in the same manner as though the authority to make the contract had existed originally." There having been some evidence tending to show that the defendant assumed to act for the constituted authorities of Asheville, it follows that when his Honor held that defendants' contention could not be maintained upon the evidence as to the ratification and its relation back to the alleged wrongful act, he did not advert to the testimony tending to prove (634) that defendant assumed to act for or on behalf of the city; this was a material fact to be passed upon by the jury, and in case they found it in favor of defendant he would have been entitled to the instruction. *Page 393 
As to the question whether the defendant was liable for the removal of the wall and earth which had been erected at the opening of Market Street into the public square, his Honor held that upon the evidence defendant could not relieve himself from liability to plaintiffs upon the ground that he was abating a nuisance. As the acts of grading the street and of removing the wall may be separated, it is important to inquire whether this wall and the earth packed between it and plaintiffs' line, upon the street, was a nuisance, and could defendant have abated it? Without going back to a discussion of what constitutes a nuisance in general, we may say, as applicable to our present case, that any permanent obstruction of a street or road, a public highway, by which the public are impeded in their passage over said highway, is a nuisance, and that according to the evidence this wall and filling in, erected upon the street or public square, certainly in the absence of any express authority from the board of aldermen to do so — and this authority cannot be proven by testimony to the individual consent of one or more members of the board — was a public nuisance, because it obstructed a portion of the street or square. S. v. Long,94 N.C. 896.
It was broadly stated in S. v. Dibble, 49 N.C. 107, that any unauthorized obstruction in a navigable stream by means of a bridge or a dam of any kind is a public nuisance which any one may abate. This proposition is qualified by Mr. Justice Reade in a case of much the same character, S. v. Parrott, 71 N.C. 311: "A common or public nuisance may be abated by any person who is annoyed thereby. And this was a most proper qualification, for although the first (635) expression has been often used by the judges, it was applied to the special facts then under consideration. It would be a proposition most dangerous to the peace of communities to say without qualification that any one may abate a public nuisance. As we are not attempting to write a treatise or a text-book it will not be necessary or proper for us to discuss the subject of the abatement of nuisances in its ever-varying phases; our province is to apply known principles already established to the facts of particular cases. It would not be difficult to demonstrate the general rule to be that as to nuisances entirely public no private person has a right to abate them, and it is very well established that where a nuisance is both public and private in its effect it may be abated by those to whom it is a private nuisance. We do not undertake to lay down any general rule as to how far the individual may go in the abatement of the nuisance which is an injury to him. Suffice it to say that his Honor should have instructed the jury that the encroachment upon the street or square, not being proven to have been authorized, was a public nuisance. And upon the evidence it was a question to be submitted to them under proper instructions whether this *Page 394 
encroachment upon the public highway was specially injurious to defendant, for upon the determination of this question rested his right to remove it without resort to an action. We refer to 2 Wood, Nuisances, chapter 21, for an interesting and instructive discussion of the subject of abatement of public nuisances by act of private persons, and an industrious collection of authorities thereon. There must be a new trial.
Error.
Cited: Hester v. Traction Co., 138 N.C. 291; Thomason v. R. R.,142 N.C. 307; S. v. Godwin, 145 N.C. 464; Jones v. Henderson,147 N.C. 124; Dorsey v. Henderson, 148 N.C. 428; Quantz v. Concord,150 N.C. 539; Harper v. Lenoir, 152 N.C. 726; Earnhardt v. Commissioners,157 N.C. 236; Wood v. Land Co., 165 N.C. 369, 370; Bennett v. R. R.,170 N.C. 391.
(PLAINTIFFS' APPEAL)